# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| SUEROS & BEBIDAS REHIDRATANTES, S.A. de C.V. and CAB ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PALIMEX DISTRIBUTORS INC., ASHRAF KHRAWISH, and DOES 1-10 <br><br> Defendants. | Civ. Action No.: 1:25-cv-02171 <br><br> Honorable Mary M. Rowland |

## AGREED MOTION FOR ENTRY OF FINAL JUDGMENT

Plaintiffs Sueros & Bebidas Rehidratantes S.A. de C.V. and CAB Enterprises, Inc. ("Plaintiffs") and Defendant Palimex Distributors Inc. have consented to entry of a final judgment and permanent injunction, and respectfully request that the Court enter the Final Judgment in the agreed form which is attached hereto as **Exhibit A.**

Date: February 24, 2026

/s/ Neal J. McLaughlin
Neal J. McLaughlin
ALSTON & BIRD LLP
90 Park Ave
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
neal.mclaughlin@alston.com

*Attorney for Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. and CAB Enterprises, Inc.*

Respectfully submitted,

/s/ Adam E. Urbanczyk
Adam E. Urbanczyk
AU LLC
444 W. Lake St. 17th Floor
Chicago, IL 60606
adamu@au-llc.com
Ph: (312) 715-7312

*Attorney for Defendant Palimex Distributors Inc.*

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SUEROS & BEBIDAS REHIDRATANTES, S.A. de C.V. and CAB ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PALIMEX DISTRIBUTORS INC., ASHRAF KHRAWISH, and DOES 1-10 <br><br> Defendants. | Civ. Action No.: 1:25-cv-02171 <br><br> Honorable Mary M. Rowland |

**[PROPOSED] FINAL JUDGMENT**

1. INTRODUCTION

Plaintiffs Sueros & Bebidas Rehidratantes, S.A. de C.V. ("Sueros") and CAB Enterprises, Inc. ("CAB") (collectively, "Plaintiffs"), filed this action against Defendant Palimex Distributors Inc. ("Palimex"), to prevent the unlawful importation and sale of foreign-manufactured rehydration beverages bearing Plaintiffs' trademarks. The Plaintiffs and Palimex stipulate to the following findings of fact and conclusions of law, and consent to entry of a permanent injunction as set forth below. Accordingly, the Court enters the following:

2. FINDINGS OF FACT

Plaintiffs are engaged in the promotion, sale, and distribution of Electrolit® branded rehydration beverages marked with their Electrolit® trademarks (the "Electrolit Marks"). Plaintiff Sueros is the owner of the Electrolit Marks and Plaintiff CAB holds an exclusive license to them in the United States. CAB authorizes use of the Electrolit Trademarks only in connection with its U.S. Electrolit® product.

The Electrolit Marks are registered with the United States Patent and Trademark Office ("USPTO") as U.S. Reg. Nos. 4222726, 4833885, 4717350, and 4717232. The Electrolit Marks are valid, subsisting, and have acquired extensive recognition in Texas and the United States and represent valuable goodwill. Three of the Electrolit Marks, U.S. Reg. Nos. 4222726, 4717350, and 4717232, have become incontestable under 15 U.S.C. §§ 1065 and 1115(b).

Versions of Electrolit® products are sold in the United States and abroad; however, Electrolit® authorized for sale in the United States ("U.S. Electrolit®") is different from the version of Electrolit® that are sold elsewhere in the world ("Unauthorized Electrolit") in ways that are significant to customers' and consumers' purchasing decisions. For example, packaging and labeling on bottles of genuine U.S. Electrolit® contain text written exclusively in English, while packaging and labeling applied on bottles of Unauthorized Electrolit contain Spanish. As another example, genuine U.S. Electrolit® products contain the unique, U.S. Electrolit® formula, while Unauthorized Electrolit contains a different formula. As another example, labels on genuine U.S. Electrolit® products identify all ingredients in the product and include FDA-compliant "Nutrition Facts." Labels on Unauthorized Electrolit products do not, because those products are only authorized to be sold outside the United States where different labeling regulations apply. As another example, labels on genuine U.S. Electrolit® products list a U.S. toll-free number for customers to call with comments or complaints. Labels on Unauthorized Electrolit products do not list a U.S. toll-free number because they are not authorized to be sold in the United States. As another example, packaging on genuine U.S. Electrolit® states that the product is gluten-free and sweetened with natural glucose, while Unauthorized Electrolit does not include those statements. As another example, packaging on genuine U.S. Electrolit® uses imperial measurements (e.g., fluid ounces) that U.S. consumers are accustomed to whereas Unauthorized Electrolit packaging

uses metric measurements (e.g., milliliters) that international consumers are accustomed to. As another example, packaging on genuine U.S. Electrolit® does not make health claims regarding the product because such pharmaceutical-like claims have not yet been approved by the FDA. Unauthorized Electrolit packaging, by contrast, contains health claims that it treats and prevents dehydration that comply with applicable regulations in the countries where Unauthorized Electrolit is authorized to be sold. As another example, packaging on genuine U.S. Electrolit® lists a "USE BY" date that informs retailers and consumers about the freshness and the quality of the product. Packaging on Unauthorized Electrolit does not list a "USE BY" date. As another example, packaging on genuine U.S. Electrolit® includes bottle deposit refund information applicable in the United States and written in English, while Unauthorized Electrolit packaging does not. Plaintiffs do not sell, authorize for sale, or cause to be sold within the United States any nonconforming products containing the differences between Unauthorized Electrolit and genuine U.S. Electrolit®.

Each of the foregoing differences are relevant to consumers' purchasing decisions and are material such that use of the Electrolit Marks in connection with the sale of Unauthorized Electrolit will cause a likelihood of confusion.

Palimex sold Unauthorized Electrolit bearing the Electrolit Marks that were not authorized for sale in the United States by Plaintiffs. Palimex's acts began after the Electrolit Marks became famous in Illinois and the United States.

Plaintiffs have devoted substantial resources to combat and police the sale of unlawful, mislabeled, and counterfeit product being illegally imported, distributed, advertised, offered for sale, and sold by infringers and counterfeiters.

3. CONCLUSIONS OF LAW

The sale, offering for sale, distribution, or advertising of Unauthorized Electrolit violates the Lanham Act and constitutes Illinois common-law trademark infringement, Illinois common-

law unfair competition, Illinois Trademark Dilution under 765 ILCS 1036/65, an Illinois Deceptive Trade Practice under 815 ILCS 510, and unjust enrichment if it is likely to cause confusion as to the source, affiliation or sponsorship of the product. 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a)(1)(A); *Okwesilieze Women's Club of Nig. Int'l v. De Okwesilieze Int'l Women's Club*, No. H-20-2845, 2021 U.S. Dist. LEXIS 221967, at *18 (S.D. Tex. Nov. 16, 2018).

A gray market good is a foreign-manufactured good, bearing a valid United States trademark, which is imported without the consent of the United States trademark holder. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). "When dealing with … gray goods, a reviewing court must necessarily be concerned with subtle differences, for it is by subtle difference that consumers are most easily confused." *Societe Des Produits Nestle, S.A.*, 982 F.2d 633, 641 (1st Cir. 1992) (adopted by *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1301–02 (5th Cir. 1997) ("We are persuaded that the Nestle/OAA test, which finds infringement if the goods sold by the authorized domestic distributor and the defendant's foreign goods are materially different, is a sound one . . . .")). Thus, in gray-goods cases, the "threshold of materiality is always quite low." *Id.* "[T]he existence of any difference . . . that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Act claim." *Id.* Material differences may include differences in the physical or non-physical attributes of the product, packaging, and labeling differences. *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 311 (S.D.N.Y. 2007) (collecting cases); *Bayer Corp. v. Custom Sch. Frames, LLC*, 259 F. Supp.2d 503, 509 (E.D. La. 2003) ("Even the use of British English spellings on the [f]oreign [p]roduct instead of American English spellings is a material difference." (citing *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F. Supp. 1240, 1244 (D.N.J. 1991)).

In the present case, Unauthorized Electrolit is materially different from U.S. Electrolit in some of the ways discussed above. The presence of these material differences creates a likelihood of confusion resulting from the sale, offering for sale, distribution, or advertising of Unauthorized Electrolit. There is no evidence that the disclosures or disclaimers placed on the packaging of the Unauthorized Electrolit were effective to dispel any likelihood of confusion or comply with applicable FDA regulations.

The Lanham Act is "a strict liability statute." *Signal Prods. v. Am. Zurich Ins. Co.*, 2013 U.S. Dist. LEXIS 179933, at *13 (C.D. Cal. Dec. 19, 2013) (citing 15 U.S.C. § 1125(a)). Accordingly, "ignorance is no defense to violations of the Lanham Act." *Philip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (citing 15 U.S.C. § 1114); *see also N. Face Apparel Corp. v. Dahan*, 2014 U.S. Dist. LEXIS 206310, at *31 (C.D. Cal. Oct. 6, 2014) (collecting cases).

Thus, as a matter of law, the importation, sale, offering for sale, distribution, or advertising of Unauthorized Electrolit in the United States constitutes trademark infringement, false designation of origin, common law unfair competition, an Illinois Deceptive Trade Practice under 815 ILCS 510 and has resulted in unjust enrichment. In addition, the sale of Unauthorized Electrolit tarnishes Plaintiffs' valuable business reputation and goodwill and is likely to blur the distinctiveness of the famous Electrolit Marks. As such, the sale, offering for sale, distribution, or advertising of Unauthorized Electrolit constitutes trademark dilution under the Lanham Act and in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/65.

As a result of the sale, offering for sale and distribution of Unauthorized Electrolit, Plaintiffs have been harmed, including harm to their goodwill in the Electrolit Marks, harm to their

reputation, price erosion, and lost sales and profits. Furthermore, Plaintiffs would be irreparably harmed by continued sale of Unauthorized Electrolit.

Considering the balance of hardships between Plaintiffs and Palimex, a remedy in equity is warranted. The interests of the public will not be disserved by a permanent injunction. To the contrary, the public will be served by an injunction to prevent any confusion. Accordingly, Plaintiffs are entitled to permanent injunctive relief.

4. ORDER

For the foregoing reasons, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. This Court has jurisdiction over the parties and the subject matter of this action; and

2. Palimex, its owners, partners, subsidiaries, affiliated companies, and the officers, directors, principals, agents, servants, and current employees of all of them while employed by or affiliated with any of the foregoing entities and all others in active concert or participation with Defendants (the "Restrained Parties") are permanently enjoined and restrained from:

   a. Purchasing for resale, selling, distributing, importing, marketing, advertising, manufacturing or otherwise dealing in the U.S. any Unauthorized Electrolit (as defined in the Complaint (Doc. 1 at ¶30);

   b. Using any logo, trade name or trademark confusingly similar to any of the Electrolit Marks which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of any or all of the Restrained Parties or others are sponsored by, authorized by or in any way associated with Plaintiffs;

   c. Manufacturing, importing, duplicating, advertising, selling or distributing any infringing and/or counterfeit Electrolit product;

    d.  Infringing any of the Electrolit Marks;

    e.  Misrepresenting the existence or nature of any connection, sponsorship, or association with Plaintiffs;

    f.  Using any reproduction, counterfeit, copy, or colorable imitation of any of the Electrolit Marks in connection with the publicity, promotion, sale, or advertising of any products;

    g.  Affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent such goods as being Electrolit® and from offering such goods in commerce;

    h.  Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (2.a.) through (2.g.) above; and

    i.  Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this order.

    j.  For the sake of clarity, nothing herein shall be construed to prohibit the lawful sale of U.S. Electrolit® products by the Restrained Parties.

  3.  Plaintiffs' claims against Palimex for breach of contract (Count XII), fraud (Count XII) and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count XIV) are dismissed without prejudice.

**SO ORDERED**:

Date: _____

_____
United States District Judge

**AGREED AS TO FORM AND SUBSTANCE:**

Ashraf Khrawish
Chief Executive Officer, Palimex Distributors Inc.